**COOK CONSULTANTS, INC.,**
Appellant,

v.

**Jean M. LARSON, Appellee.**

No. 05–83–00451–CV.

Court of Appeals of Texas,
Dallas.

Aug. 13, 1985.
Rehearing Denied Oct. 16, 1985.

William R. Allensworth, Daniel E. Westbrook, Haynes & Boone, Dallas, for appellant.

Robert E. Luna, Law Offices of Earl Luna, P.C., Edmund R. Wood, Chancellor, Wood & Martin, Dallas, for appellee.

Before AKIN, SPARLING and GUILLOT, JJ.

## ON REMAND FROM THE SUPREME COURT

SPARLING, Justice.

Defendant/appellant, Cook Consultants, appeals a judgment of liability for negligently surveying property owned by appellee, Larson. Cook argues that (1) absent privity of contract, it owed no duty to Larson; (2) the claim was barred by the two-year statute of limitations; (3) the actual damages issues were improper; (4) the court erred by refusing to submit its requested issue and instructions on avoidable consequences; (5) the evidence of gross negligence was legally and factually insufficient; (6) evidence of Larson's physical and emotional distress was irrelevant; and (7) the award of exemplary damages was excessive. We hold that (1) Cook is liable for negligent misrepresentation; (2) the statute of limitations did not bar the claim; (3) the evidence of cost of demolition was legally insufficient; (4) the refusal to submit the requested issue and instruction on avoidable consequences was not error; (5) there was no evidence of gross negligence; (6) any error in admitting the evidence of physical and emotional injury was harmless; and (7) the award of exemplary damages was excessive. We modify the judgment and affirm.

### Facts

In 1970, Commonwealth Development Corporation, the builder of Larson's home, contracted with Cook to execute a completion survey to locate all improvements on the lot. The survey indicated that the house was within the lot lines. Consequently, Modern American Mortgage Corporation approved Larson's loan, and Larson purchased the property. In 1977, Larson's neighbor, Bates, suspected an encroachment and hired Robert West to resurvey Larson's lot. West discovered that Larson's house encroached on Bates' property by two and one-half to six feet. Bates sued Larson, and the court ordered Larson to "remove all improvements encroaching upon [Bates'] property" within ninety days of the judgment.

The parties stipulated that removal of a portion of the house was economically and physically infeasible. Accordingly, Larson, in October 1979, hired a demolition company to tear down the entire structure. She sued Stewart Title Co. for breach of contract, alleging that her title insurance policy covered the encroachment, and joined Cook, alleging negligence, breach of contract to a third party beneficiary, and breach of express and implied warranties. The judge granted Stewart's motion for instructed verdict. We affirmed this judgment. *Cook Consultants, Inc., et al. v. Larson,* 677 S.W.2d 718 (Tex.App.—Dallas 1984), *affirmed,* 690 S.W.2d 567 (Tex.1985). The jury found Cook grossly negligent and awarded Larson $32,150.00 in actual damages and $230,000.00 in exemplary damages. We reversed the trial court's judgment, holding that no evidence supported the jury's finding that Larson discovered the error within two years of filing suit. 677 S.W.2d at 721. The supreme court held that "some evidence" supported the jury's finding. *Larson v. Cook Consultants, Inc., et al.,* 690 S.W.2d at 569. On remand from the supreme court, we address Cook's remaining points of error.

### A. *Negligent Misrepresentation*

#### 1. *Duty of Care*

##### a. *In General*

Cook concedes that its survey was erroneous but argues that it is not liable to Larson because, absent privity of contract, it did not owe Larson a duty of care. We need not address Larson's theory that she was a third-party beneficiary of the Cook/Commonwealth contract because we

hold that Cook owed Larson a common law duty of care.

■ Actionable negligence presupposes the existence of a legal relationship between the parties through which the wrongdoer owed a duty to the injured party. *State v. Brewer*, 141 Tex. 1, 169 S.W.2d 468, 471 (1943); *Bennett v. Span Industries, Inc.*, 628 S.W.2d 470, 473 (Tex. App.—Texarkana 1981, writ ref'd n.r.e.); *Rushing v. International Underwriters*, 604 S.W.2d 239, 243 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.); *Lumpkins v. Thompson*, 553 S.W.2d 949, 952 (Tex.Civ. App.—Amarillo 1977, writ ref'd n.r.e.). The duty may be imposed by contract or, irrespective of privity of contract, by law. Thus, although contractual privity assures a sufficiently close nexus between the parties upon which fairly to predicate liability, it is not, as Cook argues, indispensable to the imposition of a legal duty of care.

Section 552 of the Second Restatement of Torts, recognizing this proposition, provides for imposition, by law, of liability for negligent misrepresentation:

Information Negligently Supplied for the Guidance of Others

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

RESTATEMENT (SECOND) OF TORTS § 552(1) (1977).

The determination whether to hold a particular defendant liable to a person not in privity is a question of policy. Section 552 "realistically recognizes that business [persons] who justifiably rely on the advice and expertise of other business [persons], holding themselves out in the community as possessing unique skills, are entitled to expect that one possessing skill will exercise it with due care in the course of his [or her] business relationships." *First National Bank, Henrietta v. Small Business Administration*, 429 F.2d 280, 287 (5th Cir. 1970). Yet, as the Restatement itself recognizes, the expedition with which misinformation can be circulated and the potential magnitude of the loss require a restricted rule of liability for pecuniary loss caused by negligent misrepresentation. § 552, comment a; *see also* Prosser, *Misrepresentation and Third Persons*, 19 Vand.L.Rev. 231, 232 (1966). Unlimited liability can have a profound economic impact:

If liability for negligence exists, a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a liability in an indeterminate amount for an indeterminate time to an inderterminate class. The hazards of a business conducted on these terms are so extreme as to enkindle doubt whether a flaw may not exist in the implication of a duty that exposes to these consequences.

*Ultramares Corp. v. Touche*, 255 N.Y. 170, 179–80, 174 N.E. 441, 444 (1931).

■ The conflicting policies are best harmonized by limiting liability to the person or class of persons whom the maker of the representation intends to benefit [1] or who foreseeably may be expected to rely on the information.[2] Limited liability would pro-

---

1. *See, e.g., Shatterproof Glass Corp. v. James*, 446 S.W.2d 873 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n.r.e.) (accountant); *Hardy v. Carmichael*, 207 Cal.App.2d 218, 24 Cal.Rptr. 475 (Dist.Ct.App.1962) (termite inspector); *Chun v. Park*, 51 Haw. 462, 462 P.2d 905 (1969) (title company); *Ryan v. Kanne*, 170 N.W.2d 395 (Iowa 1969) (accountant); *Stotler v. Hester*, 92 N.M. 26, 582 P.2d 403 (Ct.App.1978) (appraiser);

*Tartera v. Palumbo*, 224 Tenn. 262, 453 S.W.2d 780 (1970) (surveyor).

2. *See, e.g., Kovaleski v. Tallahassee Title Co.*, 363 So.2d 1156 (Fla Dist.Ct.App.1978) (abstracter); *Audlane Lumber & Builders Supply, Inc. v. D. E. Britt Associates, Inc.*, 168 So.2d 333 (Fla.Dist.Ct. App.1964) (designer); *Williams v. Polgar*, 391 Mich. 6, 215 N.W.2d 149 (1974) (abstracter); *Rosenblum v. Adler*, 93 N.J. 324, 461 A.2d 138

mote a "social policy of encouraging the flow of commercial information upon which the operation of the economy rests," RESTATEMENT (SECOND) OF TORTS § 552 comment a (1977), without unreasonably burdening a surveyor's business.

### b. Cook's Duty of Care

■ Since knowledge of the risk is a function of the probability of injury, *Bennett*, 628 S.W.2d at 473, the nature and scope of the duty owed is determined by scrutinizing the particular risk to which the victim was subjected, which involves weighing such factors as (1) the extent to which the transaction was intended to affect the plaintiff; (2) the forseeability of harm to the plaintiff; (3) the closeness of the connection between the defendant's conduct and the injury suffered; and (4) the potential liability. *Aluma Kraft Manufacturing Co. v. Elmer Fox & Co.*, 493 S.W.2d 378, 383 (Mo.Ct.App.1973); *Rozny v. Marnul*, 43 Ill.2d 54, 250 N.E.2d 656 (1969); Green, *The Duty to Give Accurate Information*, 12 U.C.L.A. L.Rev. 464, 472 (1965).

Although we have found no Texas case holding a surveyor liable in negligence to a third party, other jurisdictions have imposed liability on surveyors,[3] and the rationale is applicable to the instant case.

First, the transaction indirectly was intended to benefit Larson, and the harm was reasonably forseeable.[4] The survey plat was addressed "TO ALL PARTIES INTERESTED IN PREMISES SURVEYED" and bore the following warranty:

The plat hereon is a true, correct and accurate representation of the property as determined by survey, the lines and dimensions of said property being as indicated by the plat; the size, location and type of buildings and improvements are as shown, all improvements being within the boundaries of the property, set back from property lines the distances indicated, and that the distance from the nearest intersecting street or road is as shown on said plat. There are no encroachments, conflicts or protrusions.

Jack Cook testified that a survey is "part of the cog that moves in a real estate transaction" and that it is used by "a lot of people just for various reasons. A lender, permanent lender wants to have a fixed record of where his money ... has been placed, a title company utilizes an appraiser, ... various financial institutions, insurance companies, just when to insure the people, various and sundry reasons." Robert West testified that the sole purpose of a survey is to protect reliance interests:

Mortgage companies use it to be certain the money they are advancing is going for the imporvements on this particular lot, that there are no encroachments or protrusions on it. The title company uses it to prepare the exceptions and so forth in their title policy and the owner uses it to be sure that his improvements are located on the property that he owns and has a deed for.

Additionally, a mortgage banker testified that Larson's loan would not have closed without the survey.

---

(1983) (auditor); *Fidelity & Deposit Co. of Maryland v. Atherton*, 47 N.M. 443, 144 P.2d 157 (1943) (accountant); *Alva v. Cloninger*, 51 N.C. App. 602, 277 S.E.2d 535 (Ct.App.1981) (assessor); *Howell v. Fisher*, 49 N.C.App. 488, 272 S.E.2d 19 (Ct.App.1980) (geological engineering firm); *Milliner v. Elmer Fox & Co.*, 529 P.2d 806 (Utah 1974) (accountant).

3. *See, e.g., Hutchinson v. Dubeau*, 161 Ga.App. 65, 289 S.E.2d 4 (Ct.App.1982) (surveyor liable if knew or should have known third person would use and rely on plat in a subsequent transaction involving the property); *Rozny v. Marnul*, 43 Ill.2d 54, 250 N.E.2d 656 (1969) (tort liability measured by scope of duty owed rather than by

artificial concepts of privity); *Tartera v. Palumbo*, 224 Tenn. 262, 453 S.W.2d 780 (1970) (defendant knew survey would be used in describing property in warranty deed).

4. Harm is "reasonably forseeable" if the actor, as a person of ordinary intelligence, should have anticipated the danger to others that his negligent act posed. *McClure v. Allied Stores of Texas, Inc.*, 608 S.W.2d 901, 903 (Tex.1980); *Missouri Pacific Railroad Company v. American Statesman*, 552 S.W.2d 99, 103 (Tex.1977); *Central Freight Lines, Inc. v. Bergeron*, 470 S.W.2d 117, 122 (Tex.Civ.App.—Beaumont 1971, writ ref'd n.r.e.).

In *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275, 275 (1922), Justice Cardozo imposed a duty of care to the buyer on public weighers in privity of contract with the seller: "The plaintiff's use of the certificates was not an indirect or collateral consequence of the action of the weighers. It was a consequence which, to the weigher's knowledge was the end and aim of the transaction." Likewise, we hold that since the very purpose of the survey was, ultimately, to facilitate purchase of the house, the injury was foreseeable, and public policy dictates imposition of a duty of care to the purchaser.

Second, the nexus between Cook's conduct and Larson's injury is close. In *Gupta v. Ritter Homes, Inc.*, 633 S.W.2d 626 (Tex.App.—Houston [14th Dist.] 1982), *affirmed in part, reversed in part, on other grounds*, 646 S.W.2d 168 (Tex.1983), the court held that privity of contract was not a prerequisite to imposition on a homebuilder of a duty of care to a second owner: "We believe that a home builder contemplates sales of the home beyond the initial purchase and, thereby, a homebuilder owes a duty to exercise ordinary care in the construction of the home." 633 S.W.2d at 628. The closeness of the connection between the negligent act and the injury validates the inference that the injury was reasonably foreseeable, irrespective of contractual privity. Cook executed the survey for a builder of a home subsequently sold to Larson; the inference that Cook foresaw or reasonably should have foreseen the possibility of harm to Larson is inescapable.

The closeness of the connection also indicates that Cook's potential liability is limited. Presumably, Cook could be held liable only to the one person or persons who owned the home at the time encroachment was discovered and a dispute arose. Only one owner possibly could be harmed by Cook's negligence. Unlike, for example, future purchasers of shares of stock attempting to hold an accountant liable, *see Milliner v. Elmer Fox & Co.*, 529 P.2d 806 (Utah 1974), Larson is not a member of an unlimited class; thus, imposing a duty of

care would not unduly disrupt current surveying practices. *See Briggs v. Sterner*, 529 F.Supp. 1155, 1177 (S.D.Iowa 1981).

■ Accordingly, we hold that Cook reasonably could have foreseen that Larson might sustain economic loss proximately caused by the negligent performance of its contractual duty accurately to survey the property and that public policy dictates imposition of a duty of care. Consequently, we hold that Cook owed Larson a duty to exercise reasonable care and competence in supplying correct information and that ample evidence supported the jury's finding of negligence.

### 2. *Proximate Cause*

The jury found that Cook negligently performed the completion survey, proximately causing $32,150.00 in actual damages. Cook argues that Larson cannot recover because (1) the evidence of justifiable reliance, a causal element, was legally and factually insufficient; and (2) a special issue inquiring about Larson's reliance, if any, was not submitted.

■ Proximate cause consists of cause in fact and foreseeability. *McClure*, 608 S.W.2d at 903. Proximate cause is that cause which, in a natural and continuous sequence, unbroken by any new and independent cause, produces the injury and without which the injury would not have occurred. *Associated Aviation Underwriters v. United States*, 462 F.Supp. 674, 681 (N.D.Tex.1979); *Phoenix Refining Co. v. Tips*, 125 Tex. 69, 81 S.W.2d 60, 61 (1935); *Holt v. Ray*, 435 S.W.2d 568, 571 (Tex.Civ.App.—Eastland 1968, no writ). The doctrine of proximate causation is employed to establish the line of legal causation and ultimately involves weighing policy considerations. It is a practical test, a test of common experience applied to human conduct. *See Springall v. Fredericksburg Hospital & Clinic*, 225 S.W.2d 232, 235 (Tex.Civ.App.—San Antonio 1949, no writ).

■ To prove that Cook's negligent act caused her injury, Larson had the burden of proving that she justifiably relied on the survey. Although Larson testified that she saw the survey for the first time in 1979, she stated that she would not have purchased the house had she known that it was built across the property line. A mortgage banker for the successor of American Mortgage Corporation testified that Cook's survey was in the file on Larson's loan and that without the survey, or if the survey had been accurate, the loan would not have closed. Larson testified that the Federal Housing Authority approved the loan application.

■ Although Larson did not directly rely on the survey, we hold that the evidence of reliance was sufficient. The FHA and American Mortgage Company relied on the accuracy of the survey, and the evidence is sufficient to prove Larson justifiably relied on their professional competence and expertise. The negligent act and the injury were not directly linked, but the chain of causation was unbroken and immediate, and, as we have held, the injury was reasonably foreseeable. Accordingly, we hold that the evidence of justifiable reliance was sufficient.

### B. *Statute of Limitations*

■ Larson's claim arose under the two-year statute of limitations, TEX.REV.CIV. STAT.ANN. art. 5526 (Vernon Supp.1984). *See Westchester Corp. v. Peat, Marwick, Mitchell & Co.*, 626 F.2d 1212, 1217 (5th Cir.1980); *Woodburn v. Turley*, 625 F.2d 589, 592 (5th Cir.1980). The statute began to run when the cause of action accrued. *Atkins v. Crosland*, 417 S.W.2d 150, 152 (Tex.1967). A cause of action accrues when the facts authorizing relief in a court of competent jurisdiction exist. *Robinson v. Weaver*, 550 S.W.2d 18, 20 (Tex.1977); *Linkenhoger v. American Fidelity and Casualty Co., Inc.*, 152 Tex. 534, 260 S.W.2d 884, 886 (Tex.1953); *Bishop v. Sepulveda*, 629 S.W.2d 807, 809 (Tex.App.—Houston [14th Dist.] 1982, no writ). Cook argues that the cause of action accrued in 1970, when the survey was made, and, accordingly, that it is barred by the statute of limitations. Larson argues that the discovery rule applies, and, thus, the cause of action accrued when she discovered or, in the exercise of reasonable diligence should have discovered, the negligence.

■ We need not determine whether the discovery rule applies because we hold that Cook waived his claim that the discovery rule was inapplicable. The jury found that Larson had "no notice of the error in the completion survey performed by Cook Consultants, Inc." The following instruction accompanied the special issue:

> You are instructed that Jean Larson would have notice of the error in the survey at that time when she knew sufficient facts that would cause an ordinary and reasonable person to make further investigation and if such investigation would have discovered that the survey in question was in error.

This instruction in effect charged the discovery rule. Cook did not object to the instruction and may not complain of this error for the first time on appeal. *Mytel International, Inc. v. Turbo Refrigerating Co.*, 689 S.W.2d 315, 318 (Tex.App.—Fort Worth, 1985); *McMullan v. Friend*, 642 S.W.2d 15, 18 (Tex.App.—El Paso 1982, no writ); *Burba v. Lary*, 296 S.W.2d 797, 804 (Tex.Civ.App.—Waco 1956, writ ref'd n.r. e.). Thus, we hold that the statute of limitations did not bar Larson's claim.

### C. *Actual Damages*

#### 1. *Measure of Recovery*

■ The jury awarded Larson $30,500.00 for the diminished value of her home as of October 1, 1979, the date of demolition. Cook concedes that the diminished value was the proper measure of damages but argues that the damages should have been measured as of the date of survey was performed, the date of discovery, or the date of filing the suit. We disagree. An injured party is entitled to be fully compensated for wrongful injury to or destruction of property. *McAllen Coca Cola Bottling Co., Inc. v. Alvarez*, 581

S.W.2d 201, 205 (Tex.Civ.App.—Corpus Christi 1979, no writ); *R.G. McClung Cotton Co. v. Cotton Concentration Co.*, 479 S.W.2d 733, 737 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.). The proper measure of damages for permanent injury to real property is the difference between the reasonable cash market value immediately before and immediately after the injury. *Kraft v. Langford*, 565 S.W.2d 223, 227 (Tex.1978); *Macha v. Crouch*, 500 S.W.2d 902, 905 (Tex.Civ.App.—Corpus Christi 1973, no writ); *Weaver Construction Co. v. Rapier*, 448 S.W.2d 702, 703 (Tex.Civ. App.—Dallas 1970, no writ).

■ Larson purchased the house after the survey was made; hence, she suffered no injury at the time of the negligent act. Nor do we agree that the date of discovery is the proper measure. Larson did not suffer the injury for which she seeks compensation—the injury proximately caused by Cook's negligence—until the date of demolition. Prior to that date, the extent of injury, if any, was uncertain and speculative. Accordingly, we hold that the date of demolition was the proper measure of recovery.

### 2. *Evidence of Cost of Demolition*

The jury found that the "reasonable and necessary cost in Dallas County, Texas, for removing that portion of Larson's house . . . which crossed the property line . . . was $1,650.00." Cook argues that the evidence of reasonableness was legally or factually insufficient to support submission of the issue. We agree that no evidence was introduced to sustain the finding.

■ A claimant has the burden of proving the reasonableness of expenses. *Foust v. Hanson*, 612 S.W.2d 251, 254 (Tex. Civ.App.—Beaumont 1981, no writ); *Truck Farm, Inc. v. Allen*, 608 S.W.2d 296, 297 (Tex.Civ.App.—Dallas 1980, no writ). The only evidence of the expense is Larson's testimony that she paid $1,650.00. Proof of the amount paid does not raise the issue of reasonableness. *Dallas Railway & Terminal Co. v. Gossett*, 156 Tex. 252, 294 S.W.2d 377, 382 (1956); *Delta Air Lines,*

*Inc. v. Gibson*, 550 S.W.2d 310, 313 (Tex. Civ.App.—El Paso 1977, writ ref'd n.r.e.). Accordingly, we hold that the issue should not have been submitted and deduct the amount from Larson's total recovery.

### 3. *Avoidable Consequences*

■ Cook argues that the judge erred by refusing to submit its requested issue and instruction on avoidable consequences. Cook contends that by refusing to settle, Larson failed to exercise reasonable care to avoid or prevent the loss. *See Ford Motor Co. v. Dallas Power & Light*, 499 F.2d 400, 414–15 (5th Cir.1974); *Smith v. International Printing Pressmen & Assistants Union of North America*, 190 S.W.2d 769, 775 (Tex.Civ.App.—Dallas 1945), *rev'd on other grounds*, 145 Tex. 399, 198 S.W.2d 729 (1946). The judge submitted the following instruction:

> You are instructed that a Plaintiff must exercise reasonable care to lessen or mitigate the damages or losses flowing from an event, if any. A Plaintiff's damages or losses may not be proximately caused by another person's conduct to the extent, if any, a Plaintiff fails to exercise such reasonable care.

Cook's requested instruction was not materially different. We hold that the instruction submitted adequately preserved Cook's right to have the jury consider the doctrine of avoidable consequences.

### D. *Gross Negligence*

■ Cook argues that the evidence was legally or factually insufficient to support a finding of gross negligence. We agree. Gross negligence is "that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 917 (Tex.1981); *Bennett v. Howard*, 141 Tex. 101, 170 S.W.2d 709, 712 (1943). The essence of gross negligence is the mental attitude of the defendant:

What lifts ordinary negligence into gross negligence is the mental attitude of the defendant; that is what justifies the penal nature of the imposition of exemplary damages. The Plaintiff must show that the defendant was consciously, i.e., knowingly, indifferent to his rights, welfare and safety. In other words, the Plaintiff must show that the Defendant knew about the peril, but his acts or omissions demonstrated that he didn't care.

*Burk Royalty,* 616 S.W.2d at 922. A mental state may be inferred from action, and all actions or circumstances indicating a state of mind amounting to conscious indifference must be examined. *Id.*

 Although Cook characterized the error as a mere "miscalculation" or "misturned angle," the evidence reveals that the lot was pie-shaped, on a curve, in a wooded area, and near a creek, making it particularly difficult to survey. Cook was paid $50.00 and surveyed the property in thirty minutes. West testified that a careful survey of the property would require at least four hours, and Cook's resurvey took four days. Cook testified that, to make a profit, he instructed his employees to spend no more than one hour surveying the property. Cook knew that people relied on surveys and testified that surveys are an intregral part of real estate transactions. The survey bore his certification that "I have this date made a careful and accurate survey on the ground this property is located...."

Although this evidence may indicate Cook was careless or negligent, we hold that it is not evidence of gross negligence. The evidence does not support the inference that cook was consciously indifferent to the rights of others or that he knew about the peril but did not care. Nor does the evidence reveal that Cook acted with the specific intent to injure Larson. The negligent act did not endanger human life; the primary damage was to property, not to the person. Accordingly, we hold that the evidence is insufficient to support the award of exemplary damages.

Cook argues, additionally, that evidence of "remote damages"—Larson's physical and emotional distress, loss of employment, mental anguish, loss of earning opportunity and attorney's fees—was inadmissible as irrelevant. Since we have held that the award of exemplary damages was unjustified, any error in admitting this evidence without sufficient proof of gross negligence is harmless.

We modify the trial court's judgment to award Larson actual damages in the amount of $30,500.00 and to delete the award of exemplary damages. We affirm the trial court's judgment, as modified.