

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00581-CV

Dean **DAVENPORT**; Dillon Water Resources, Ltd.; 5D Drilling and Pump Service, Inc. f/k/a
Davenport Drilling & Pump Service, Inc.; 5D Water Resources, LLC f/k/a Davenport Oper.,
LLC; Water Exploration Co., Ltd.; WAD, Inc.; Water Investment Leasing Company, LLC;
Blue Gold Resources Management, LLC; Blue Gold Properties, LLC;
and Blue Gold Development, LLC;
Appellants

v.

Tom **HALL**, Thomas C. Hall P.C., and Blake Dietzmann,
Appellees

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CI-03086
Honorable Peter A. Sakai, Judge Presiding

Opinion by:  Irene Rios, Justice

Sitting:  Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Irene Rios, Justice

Delivered and Filed: April 10, 2019

REVERSED AND RENDERED IN PART; AFFIRMED IN PART

Dean Davenport appeals from a judgment requiring him to pay $226,795.01 in breach of

contract damages and $1,386,745.96 in attorney's fees to his former lawyers, Tom Hall, Thomas

C. Hall P.C., and Blake Dietzmann ("Hall and Dietzmann"). The same judgment orders Hall and

Dietzmann to take nothing on claims they brought against multiple companies affiliated with

Davenport ("the companies").[1] Davenport challenges both the damages and the attorney's fees awarded. The companies, which successfully defended the claims against them, challenge the trial court's failure to award them their court costs.

We conclude that the evidence was legally insufficient to support an award of $226,795.01 in damages and, in the absence of an award of damages on their breach of contract claim, Hall and Dietzmann were not entitled to recover attorney's fees. Therefore, we reverse the part of the judgment awarding Hall and Dietzmann damages and attorney's fees and render judgment that Hall and Dietzmann take nothing. We also conclude that the trial court should have awarded the companies their court costs. Therefore, we render judgment awarding the companies their court costs.

### BACKGROUND

Davenport engaged the services of lawyers Hall and Dietzmann to represent him in business-related litigation, which the parties refer to in their briefing as the Allen/Wynne lawsuit. The parties[2] signed a contingency fee agreement, and Hall and Dietzmann represented Davenport in the litigation. After the Allen/Wynne litigation concluded, a dispute arose about the terms of the contingency fee agreement.

### *Hall and Dietzmann File Suit*

Hall and Dietzmann filed suit against Davenport and the companies. Their petition included multiple claims, including two breach of contract claims and an attorney's fees claim against Davenport. Under the first breach of contract claim, Hall and Dietzmann alleged that the terms of

---

[1]These companies are Dillon Water Resources, Ltd.; 5D Drilling and Pump Service, Inc. f/k/a Davenport Drilling & Pump Service, Inc.; 5D Water Resources, LLC f/k/a Davenport Oper., LLC; Water Exploration Co., Ltd.; WAD, Inc.; Water Investment Leasing Company, LLC; Blue Gold Resources Management, LLC; Blue Gold Properties, LLC; and Blue Gold Development, LLC.

[2]Tom Hall's law firm at the time, Hall and Bates L.L.P., was also a party to the agreement.

the contingency fee agreement entitled them to ownership interests in two companies, Water Exploration Co. Ltd. (WECO) and WAD Inc., and that Davenport had breached the contingency fee agreement by refusing to transfer ownership interests in the companies to Hall and Dietzmann. Under the second breach of contract claim, Hall and Dietzmann alleged that the terms of the contingency fee agreement entitled them to recover their litigation expenses and that Davenport had breached the contingency fee agreement by failing to reimburse them for the expenses they had incurred in the litigation.

### The Jury Trial

The trial court held a jury trial on Hall and Dietzmann's claims. Determining that the contingency fee agreement was ambiguous, the trial court asked the jury to decide if Hall and Dietzmann were entitled to recover ownership interests in WECO and WAD under the agreement. The jury found that Hall and Dietzmann were not entitled to recover ownership interests in WECO and WAD under the agreement. Therefore, the jury found against Hall and Dietzmann on their first breach of contract claim. However, the jury found in favor of Hall and Dietzmann on their second breach of contract claim. Specifically, the jury found that Davenport had failed to comply with the fee agreement by not paying Hall and Dietzmann for litigation expenses and that $226,795.01 would compensate Hall and Dietzmann for "reasonably necessary" expenses incurred in the litigation. Finally, the jury found against Hall and Dietzmann on the claims they had brought against the companies.

### The Bench Trial

About six months after the jury trial, the trial court held a bench trial on Hall and Dietzmann's claim for attorney's fees. At the bench trial, Hall and Dietzmann asked the trial court to award them attorney's fees based on their successful breach of contract claim. The trial court

awarded Hall and Dietzmann $1,386,745.96 in attorney's fees based on their breach of contract claim for litigation expenses.

### Final Judgment and Motion for New Trial

The trial court signed a final judgment incorporating both the jury's findings on the litigation expenses and the trial court's attorney's fees award. Hall and Dietzmann then filed a motion for new trial, which the trial court granted.

### Mandamus Proceedings

Davenport challenged the order granting new trial by filing a petition for a writ of mandamus in this court. This court conditionally granted mandamus relief in part, concluding that the reasons stated in the order granting a new trial were not sufficiently specific. *In re Davenport*, No. 04-14-00666-CV, 2015 WL 1089679, at *4 (Tex. App.—San Antonio March 11, 2015, orig. proceeding). This court directed the trial court to vacate its order granting a new trial and to issue a new order specifying its reasons for disregarding the jury verdict. *Id*. In response, the trial court signed a second order granting a new trial, which Davenport challenged by filing another petition for a writ of mandamus in this court. This time we denied mandamus relief. *In re Davenport*, No. 04-15-00231-CV, 2015 WL 6510955, at *1 (Tex. App.—San Antonio Oct. 28, 2015, orig. proceeding).

Davenport subsequently filed a mandamus petition in the Texas Supreme Court, again challenging the granting of a new trial. Davenport argued the trial court abused its discretion in disregarding the jury's finding that the contingency fee agreement did not allow Hall and Dietzmann to recover ownership interests in WECO and WAD as attorney's fees, and in determining that the agreement unambiguously allowed Hall and Dietzmann to recover an ownership interest in WECO and WAD as attorney's fees. *In re Davenport*, 522 S.W.3d 452, 455 (Tex. 2017) (orig. proceeding). The supreme court agreed with Davenport, concluding that the

agreement unambiguously stated that Hall and Dietzmann were not entitled to recover ownership interests in the companies as attorney's fees. *Id*. at 454, 459. In conditionally granting mandamus relief, the supreme court directed the trial court to vacate both of its new trial orders and to render a final judgment consistent with its opinion. *Id*. at 459.

### *Motion to Render Judgment and Amended Judgment*

Returning to the trial court, Hall and Dietzmann filed a motion to effectuate the supreme court's opinion and render judgment. The trial court granted the motion and signed an amended judgment, which vacated the new trial orders and awarded Hall and Dietzmann essentially the same relief as the initial judgment. The amended judgment ordered that Hall and Dietzmann recover from Davenport (1) $226,795.01 in damages for unpaid litigation expenses, (2) $1,386,745.96 in attorney's fees incurred in the trial court, and (3) conditional appellate attorney's fees in the event Davenport pursued an unsuccessful appeal. Additionally, the amended judgment ordered Hall and Dietzmann to take nothing from the companies. Davenport and the companies filed this appeal.

## LEGAL SUFFICIENCY OF THE EVIDENCE—REASONABLY NECESSARY EXPENSES

We first address Davenport's complaints that the evidence was legally insufficient to support the jury's findings on the breach of contract claim for litigation expenses because no evidence was presented that the expenses were reasonably necessary.

In reviewing the legal sufficiency of the evidence to support a jury finding, we consider whether the trial evidence would enable a reasonable and fair-minded juror to reach the finding in question. *Seger v. Yorkshire Ins. Co., Ltd.*, 503 S.W.3d 388, 406-07 (Tex. 2016). No evidence exists to support a finding when there is (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to

prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Id*. at 407.

When a party in a civil case makes a proper objection to an improper jury charge or instruction, we measure sufficiency of the evidence against the jury charge or instruction that should have been given. *WPS, Inc. v. Enervest Operating, L.L.C.*, No. 01-06-00759-CV, 2010 WL 2244077, at \*7 (Tex. App.—Houston [1st Dist.] May 28, 2010, pet. denied) (citing *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex. 2002)). "However, if no objection is made, or if an incorrect objection is made, we measure the sufficiency of the evidence against the jury charge or instruction actually given." *Id*.; *see Seger*, 503 S.W.3d at 407.

Under Texas law, a plaintiff has the burden of presenting specific evidence of the reasonableness and necessity of any expenses he seeks to recover from a defendant. *McGinty v. Hennen*, 372 S.W.3d 625, 627-28 (Tex. 2012); *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 200-01 (Tex. 2004); *701 Katy Bldg., L.P., v. John Wheat Gibson, P.C.*, No. 05-16-00193-CV, 2017 WL 3634335, at \*9-10 (Tex. App.—Dallas 2017, pet. denied); *Rivas v. Garibay*, 974 S.W.2d 93, 95-96 (Tex. App.—San Antonio 1998, pet. denied); *Cook Consultants, Inc. v. Larson*, 700 S.W.2d 231, 238 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). This rule applies in both tort and contract cases. *701 Katy Bldg.*, 2017 WL 3634335, at \*9-10 (moving expenses in a breach of lease/constructive eviction case); *see McGinty*, 372 S.W.3d at 627 (repair costs in a breach of contract case); *Mustang Pipeline*, 134 S.W.3d at 200 (completion costs in a breach of contract case); *Rivas*, 974 S.W.2d at 95-96 (medical expenses in a negligence case); *Cook Consultants*, 700 S.W.2d at 238 (costs to move a house in a negligence case). To establish that expenses were reasonable and necessary, evidence of the amounts charged and paid, standing alone, is not enough. *Mustang Pipeline*, 134 S.W.3d at 200-01; *Rivas*, 974 S.W.2d at 96. The plaintiff must show more than the character of the services, the need for the services, and the

amounts charged; instead, some other evidence showing that the charges are reasonable and necessary is required. *McGinty*, 372 S.W.3d at 627; *701 Katy Bldg.*, 2017 WL 3634335, at *9; *Cook Consultants*, 700 S.W.2d at 238. In the absence of evidence showing that the charges were reasonable and necessary, recovery of such expenses must be denied. *McGinty*, 372 S.W.3d at 627-29 (concluding expert's testimony estimating repair costs was legally insufficient to establish reasonableness); *Mustang Pipeline*, 134 S.W.3d at 200-01 (holding the trial court properly disregarded jury's damage award when the claimant presented no evidence to show that the amount paid to complete the construction project was reasonable); *701 Katy Bldg.*, 2017 WL 3634335, at *9-10 (concluding evidence was legally insufficient when claimant adduced no evidence that its expenses were reasonable); *Cook*, 700 S.W.2d at 238 (modifying judgment to delete expense award when there was no evidence of the reasonableness of the expense).

Here, no one objected to the use of the term "reasonably necessary," which appeared twice in the jury charge. Question 5 asked the jury, "Did [] Davenport fail to comply with the Fee Agreement in connection with the payment of expenses…?" Question 5 specifically instructed the jury that "[t]he Fee Agreement required 'all *reasonably necessary* expenses incurred in the prosecution of the case . . . to be paid by Hall & Bates, L.L.P and Blake Dietzmann and, which sums shall be repaid by [Davenport] out of any monies recovered after the payment of attorney's fees.'" (emphasis added). The jury answered, "Yes." Question 6 asked the jury, "What sum of money, if paid now in cash, would fairly and reasonably compensate [Hall and Dietzmann] for *reasonably necessary* expenses incurred in the prosecution of the Allen/Wynne Lawsuit?" (emphasis added). The jury answered, "$226,795.01." Therefore, for the evidence to be legally sufficient to support the jury's answers to these questions, some evidence had to be presented showing that the litigation expenses were reasonably necessary.

We have reviewed the record and we agree that no evidence was presented to show that the litigation expenses were reasonably necessary. No witnesses testified that the litigation expenses were reasonably necessary, and no other evidence was admitted showing that the litigation expenses were reasonably necessary. An expense report prepared by Hall's law firm was admitted into evidence, but it did not supply the necessary proof. The expense report merely contained a brief description of each expense and listed its amount; it did not contain any information showing that the litigation expenses were reasonably necessary.[3] *See 701 Katy Bldg.*, 2017 WL 3634335, at *9-10 (concluding evidence merely indicating that expenses were paid was legally insufficient evidence of reasonableness); *CS Custom Homes, LLC v. Stafford*, No. 03-13-00315-CV, 2015 WL 5684080, at *5 (Tex. App.—Austin 2015, no pet.) (concluding evidence was legally insufficient to establish repair costs in a construction defect case when the record lacked "any evidence from which the jury could reasonably discern that [the] charges—whether the hourly rate, the amounts charged per task, or their total amount—were reasonable amounts to pay" for the services provided). Therefore, we conclude the evidence was legally insufficient to support the jury's answers to Questions 5 and 6.

In response to Davenport's legal sufficiency argument, Hall and Dietzmann do not argue that the record contains any evidence showing that the litigation expenses were reasonably necessary. Instead, Hall and Dietzmann argue that they were not required to present any evidence that the litigation expenses were reasonably necessary because Davenport judicially admitted that he owed most of the litigation expenses.

---

[3]For example, the first three entries on the expense report are:

| 3/7/08 | WESTLAW | FEB. LEGAL RESEARCH | -208.05 |
| 4/2/08 | WESTLAW | MARCH LEGAL RESEARCH | -327.62 |
| 5/15/08 | BEXAR COUNTY LAW LIBRARY | COPIES-TOM HALL ACCOUNT-DAVENPO… | -685.25 |

A true judicial admission is a formal waiver of proof typically found in pleadings or the parties' stipulations. *Villarreal v. Guerra*, 446 S.W.3d 404, 412 (Tex. App.—San Antonio 2014, pet. denied); *Weslaco Fed'n of Teachers v. Texas Educ. Agency*, 27 S.W.3d 258, 263 (Tex. App.—Austin 2000, no pet.). "Judicial admissions are a formal act, and the doctrine should be applied with caution." *Weslaco Fed'n*, 27 S.W.3d at 263. The rule governing judicial admissions is based on the public policy that it would be unjust to permit a party to recover after he has sworn himself out of court by a clear, unequivocal statement. *Laredo Medical Group Corp. v. Mireles*, 155 S.W.3d 417, 429 (Tex. App.—San Antonio 2004, pet. denied); *Weslaco Fed'n*, 27 S.W.3d at 263. A statement will be deemed a judicial admission only if: (1) the statement was made during the course of a judicial proceeding; (2) the statement was contrary to an essential fact embraced in a theory of recovery; (3) the statement was deliberate, clear, and unequivocal; (4) the statement related to a fact upon which judgment for the opposing party could be based; and (5) enforcing the admission would be consistent with public policy. *Seminole Pipeline Co. v. Broad Leaf Partners, Inc.*, 979 S.W.2d 730, 740 (Tex. App.—Houston [14th Dist.] 1998, no pet.); *Weslaco Fed'n*, 27 S.W.3d at 263.

In support of their judicial admission argument, Hall and Dietzmann cite to (1) the opening statement given by Davenport's counsel at the jury trial, and (2) Davenport's counsel's testimony during the bench trial. During his opening statement to the jury, Davenport's counsel stated:

> Now, I want to talk to you about the expenses that were mentioned, that Mr. Hall has incurred, because it is true that Mr. Hall incurred around—*I think the actual expense amount that he says is about $170,000*. And then the balance is—he borrowed the money—is finance charges that he incurred.

> And you saw under the fee agreement that if there is a money recovery, all right, Mr. Davenport owes the money back. Well, here's the odd thing. When the expenses were incurred, Mr. Hall paid for them. Mr. Davenport didn't see the bills. Mr. Hall didn't send Mr. Davenport an invoice, itemized list of whatever his expenses were, and tell him how much they were until October of 2011. The first time he did it, two years after the case ended.

*And then when Mr. Davenport saw the expenses, he had an issue with them.* Namely, remember the bankruptcy lawyer that they had to hire by the hour….

….

[T]hat was kind of an unexpected item, that they would need a bankruptcy lawyer. And so Mr. Davenport and Mr. Hall agreed to split the bankruptcy fees 50/50.

When Mr. Hall sent the expense ledger to Mr. Davenport, he was asking Mr. Davenport to repay 100 percent of the expenses for the bankruptcy lawyer that Mr. Hall paid and giving Mr. Davenport no credit for the bankruptcy fees he had paid.

*So, there was a dispute, and that's going to be a dispute you're going to have to resolve.* But the key thing is, the notion that somehow Mr. Davenport – Mr. Hall was – had these outstanding expenses that Mr. Davenport wasn't paying for all of these years, I mean, it is not exactly right because he never sent him a bill until four months before the lawsuit got filed.

(emphasis added).

First, we note that counsel's opening statement, which was not evidence, merely explained Davenport's perspective regarding the litigation expenses. *See Weslaco Fed'n*, 27 S.W.3d at 263 (holding counsel's general comments made during his opening statement, which were not evidence, did not constitute judicial admissions). Second, nowhere in his opening statement did counsel deliberately, clearly, and unequivocally state that Davenport owed the claimed litigation expenses. *Seminole Pipeline*, 979 S.W.2d at 740 (holding counsel's remarks were equivocal and did not rise to the level of judicial admissions). We conclude that the comments made by Davenport's counsel during his opening statement did not qualify as a judicial admission that Davenport owed the litigation expenses and they did not otherwise supply the required proof that the litigation expenses were reasonably necessary.

In further support of their judicial admission argument, Hall and Dietzmann cite to testimony from Davenport's counsel at the bench trial on attorney's fees. However, in reviewing the legal sufficiency of the evidence to support the jury's findings, we must consider the evidence admitted during the jury trial. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005);

*Wynn v. Silver Oaks Apartments, Ltd.*, No. 04-12-00727-CV, 2014 WL 60657, at\*1 (Tex. App.—San Antonio Jan. 8, 2014, no pet.); *Marin v. Herron*, No. 04-11-00352-CV, 2012 WL 3205427, at \*4 n.2 (Tex. App.—San Antonio Aug. 8, 2012, no pet.). Here, counsel's testimony was not elicited during the jury trial. Therefore, it would be improper for us to consider counsel's testimony in conducting a legal sufficiency review of the jury's findings. *See City of Keller*, 168 S.W.3d at 822; *Wynn*, 2014 WL 60657, at\*1; *Marin*, 2012 WL 3205427, at \*4 n.2.

But even if we could consider the statements made by Davenport's counsel during his bench trial testimony, we would conclude that the statements did not constitute judicial admissions. At the bench trial, Davenport's counsel testified as an expert witness on attorney's fees. In evaluating Hall and Dietzmann's attorney's fees claim, Davenport's counsel testified that the parties' main dispute during the jury trial was not about the litigation expenses, but about Hall and Dietzmann's ownership interest in the companies. Davenport's counsel went on to testify that Hall and Dietzmann should not be permitted to recover attorney's fees for the work they performed in pursuing their unsuccessful ownership interest claim and that Hall and Dietzmann had not properly segregated their billing records. Davenport's counsel also testified that in awarding attorney's fees the trial court should "take into account" that the litigation expenses issue was "something that really I think both parties could have worked out. It wasn't really in dispute." Davenport's counsel further testified that "[o]bviously, there was a very small dispute about this expense issue," and if only the litigation expenses had been in dispute, the parties "probably wouldn't [have been] where we were" because "I don't think it was a huge issue to recover those [expenses]."[4] Because

---

[4]Hall and Dietzmann also claim that Davenport's counsel testified that the reimbursement of the bankruptcy attorney's fees "[w]as the only argument [Davenport] made about the expenses." However, counsel made this statement while he was reading back part of another witness's testimony from the jury trial. Thus, it is unclear if the statement can even be attributed to Davenport's counsel.

Davenport's counsel did not deliberately, clearly, and unequivocally testify that Davenport owed the litigation expenses, his statements did not constitute judicial admissions.

Additionally, Hall and Dietzmann argue that they were not required to present evidence that the litigation expenses were reasonably necessary because the only fact issue the jury was asked to decide was whether the parties had agreed to split the expense of the bankruptcy lawyer. We disagree. The record shows that the jury's findings were not limited to the expense of the bankruptcy lawyer. Two questions regarding the litigation expenses (Question 5 and Question 6) were submitted to the jury. The breach of contract question (Question 5) was not limited to the issue of whether the parties had agreed to split the expense of a bankruptcy lawyer; instead, it asked the jury to decide if Davenport had failed to comply with the contingency fee agreement concerning the payment of the litigation expenses. Similarly, the damage question (Question 6) was not limited to the amount owed for the expense of a bankruptcy attorney; instead, it asked the jury to decide the total sum that would compensate Hall and Dietzmann for the litigation expenses. Nothing in the record indicates that Hall and Dietzmann urged the trial court to limit the scope of Questions 5 and 6. Furthermore, during closing arguments, Hall and Dietzmann asked the jury to answer Questions 5 and 6 in their favor, and the jury ultimately answered these questions in their favor. Finally, the trial court based its amended final judgment on the jury's answers to these questions.[5]

---

[5]The amended judgment states:

> In response to the jury charge, the jury made findings that the Court received, filed, and entered of record. The questions submitted to the jury and the jury's findings are incorporated by reference.
>
> ….
>
> It is further ORDERED that [Hall and Dietzmann] recover the following relief from Dean Davenport on their breach-of-contract claim for expenses…the sum of $226,795.01 in actual damages, as found by the jury in response to Question No. 6[.]

Under Texas law and the jury charge given in this case, Hall and Dietzmann were required to present some evidence that the litigation expenses were reasonably necessary. However, the record shows the complete absence of evidence showing that the litigation expenses were reasonably necessary. We conclude that the evidence was legally insufficient to support the jury's answers to Questions 5 and 6 and, therefore, the trial court erred in entering a judgment in favor of Hall and Dietzmann on their breach of contract claim for litigation expenses.

### ATTORNEY'S FEES

Next, we address Davenport's complaint that the trial court erred in awarding attorney's fees to Hall and Dietzmann because they did not prevail on their breach of contract claim and recover damages.

Hall and Dietzmann based their attorney's fees claim on section 38.001 of the Texas Civil Practice and Remedies Code, which provides that a party "may recover reasonable attorney's fees from an individual or corporation . . . if the claim is for . . . an oral or written contract." TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8). "To recover attorney's fees under [s]ection 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." *Green Int'l v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997).

As we concluded in the previous section of this opinion, Hall and Dietzmann were not entitled to a judgment in their favor on their breach of contract claim for litigation expenses. Because Hall and Dietzmann were not entitled to prevail on and recover damages on their breach of contract claim, they were not entitled to recover attorney's fees under section 38.001. *See Mustang Pipeline*, 134 S.W.3d at 201 (reversing party's award of attorney's fees because it did not recover damages on its breach of contract claim); *Green Int'l*, 951 S.W.2d at 390 (holding party was not entitled to recover attorney's fees under section 38.001 when it failed to recover damages on its breach of contract claim); *701 Katy Bldg.*, 2017 WL 3634335, at *10 ("And because

the law firm was not entitled to recover damages on its breach of contract claim, it was not entitled to recover its attorney's fees either."). Therefore, we conclude the trial court erred in awarding attorney's fees to Hall and Dietzmann.

### FAILURE TO AWARD COURT COSTS TO THE COMPANIES

Finally, we address the companies' complaint that the trial court erred by not awarding them their court costs pursuant to Rule 131 of the Texas Rules of Civil Procedure. In response, Hall and Dietzmann assert that this complaint has not been preserved for appellate review.

Under some circumstances, when a party files a motion to enter a judgment and the trial court grants the motion and enters the requested judgment, the movant cannot later complain of that judgment. *DeClaris Assoc. v. McCoy Workplace Solutions, L.P.*, 331 S.W.3d 556, 560 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *Casu v. Marathon Ref. Co.*, 896 S.W.2d 388, 389 (Tex. App.—Houston [1st Dist.] 1995, writ denied). The reason for this rule is that a party may not request that the trial court take an action and then complain on appeal when the trial court did what it was asked to do. *DeClaris Assoc.*, 331 S.W.3d at 560. Therefore, to preserve a complaint for appeal, a party who moves the trial court to enter judgment should state that it agrees only with the form of the judgment and note its disagreement with the content and result of the judgment. *Casu*, 896 S.W.2d at 390 (citing *First Nat'l Bank of Beeville v. Fojtik*, 775 S.W.2d 632, 633 (Tex. 1989)).

In this case, the companies filed a motion to render judgment in which they asked the trial to render judgment in conformity with the supreme court's opinion granting mandamus relief. Attached to the motion was a proposed judgment, which the trial court ultimately signed. The companies' motion to render judgment stated, "By submitting this form of judgment, [the companies] agree only as to the form of judgment but disagree with the content and result of any judgment that awards damages or attorney's fees to [Hall and Dietzmann]." The motion to render

judgment also stated that it was filed "subject to and without waiving" three other post-judgment motions filed by the companies. Two of these post-judgment motions complained about the trial court's failure to award the companies their court costs. Additionally, when the companies' counsel signed the proposed judgment he included the notation, "APPROVED AS TO FORM ONLY."

The record before us shows that even though the companies moved the trial court to render judgment, they also informed the trial court that they disagreed with the content and result of the proposed judgment. *See Hooks v. Samson Lone Star, Ltd. P'shp*, 457 S.W.3d 52, 67 (Tex. 2015) (holding that a party who moved for entry of judgment did not waive his right to appeal when he specifically reserved the right to challenge prior court orders in his motion to enter judgment); *Fojtik*, 775 S.W.2d at 633 (concluding that a reservation contained in a motion to enter judgment preserved the movants' right to complain of the judgment). We conclude that by filing a qualified motion to render judgement, the companies preserved their complaint for appellate review.

Turning to the merits of this complaint, the companies argue the trial court erred by not awarding them their court costs pursuant to Rule 131 of the Texas Rules of Civil Procedure. Rule 131 provides that "[a] successful party to a suit shall recover of [its] adversary all costs incurred therein, except where otherwise provided." TEX. R. CIV. P. 131. "A defendant who obtains a take[-]nothing judgment is a successful party entitled to the award of costs under rule 131." *Midwest Med. Supply Co. v. Wingert*, 317 S.W.3d 530, 539 (Tex. App.—Dallas 2010, no pet.); *Clark v. Porter*, No. 04-08-00520-CV, 2009 WL 2618359, at *4 (Tex. App.—San Antonio 2009, pet. denied). A trial court may nevertheless assess costs differently for good cause, but this good cause must be stated on the record. TEX. R. CIV. P. 141 ("The court may, for good cause, to be stated on the record, adjudge the costs otherwise than as provided by law or these rules."); *see Int'l*

*Med. Ctr. Enter., Inc. v. ScoNet, Inc.*, No. 01-16-00357-CV, 2017 WL 4820347, at \*15 (Tex. App.—Houston [1st Dist.] Oct. 26, 2017, no pet.).

Because the companies obtained a take-nothing judgment on all the claims against them, they were the successful parties. *See Midwest Med. Supply Co.*, 317 S.W.3d at 539; *Clark*, 2009 WL 2618359, at \*4. Additionally, the record is devoid of any statement of good cause by the trial court. Under these circumstances, the trial court erred by not awarding the companies their court costs as required by rule 131. *See* TEX. R. CIV. P. 131; *Int'l Med. Ctr. Enter.* 2017 WL 4820347, at \*15 (concluding that the award of court costs to successful parties was mandated under Rule 131 when the record did not contain a statement showing good cause for failing to award court costs).

## CONCLUSION

In the absence of evidence that the litigation expenses were reasonably necessary, the evidence was legally insufficient to support the jury's findings in favor of Hall and Dietzmann on their breach of contract claim for litigation expenses. Therefore, the trial court erred in entering judgment in favor of Hall and Dietzmann on this claim. Additionally, because Hall and Dietzmann did not prevail on either of their breach of contract claims and were not entitled to recover damages on these claims, the trial court erred in awarding Hall and Dietzmann attorney's fees. Finally, as the successful parties in this case, the companies were entitled to recover their court costs. Therefore, the trial court erred in not awarding the companies their court costs.

We reverse the part of the judgment awarding Hall and Dietzmann $226,795.01 in litigation expenses and $1,386,745.96 in attorney's fees and render judgment that (1) Hall and Dietzmann take nothing on their claims, and (2) the companies recover their court costs. *See* TEX. R. APP. P.

43.2(c) (providing that the court of appeals may reverse the trial court's judgment and render the judgment that the trial court should have rendered). We affirm the remainder of the judgment.

Irene Rios, Justice